**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| Jane Doe (DDH), an individual<br>   Plaintiff<br><br>v.<br><br>G6 HOSPITALITY, LLC,<br>G6 HOSPITALITY IP, LLC,<br>G6 HOSPITALITY PROPERTY, LLC,<br>G6 HOSPITALITY PURCHASING, LLC,<br>HANDY, MOSS & MARIAN LIVING<br>TRUST and SHRI RAAM KRUSHNA, LLC.<br>   Defendants | CIVIL ACTION NO. 1:23-cv-00283<br>Related case: 1:23-cv-00269-MJT |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW Plaintiff Jane Doe (DDH), by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

**SUMMARY**

1.      As sex trafficking has grown to epidemic proportions, it has become widely recognized that we must look beyond just the pimp and sex buyer in order to stop sex trafficking. We must look to the other individuals and entities who facilitate and benefit from sex trafficking.

2.      The facilitation of sex trafficking is unlawful under federal law. The Trafficking Victims Protection Reauthorization Act ("TRVPA"), 18 U.S.C. § 1581, *et seq*, expands trafficking liability beyond the sex seller and buyer to also prohibit individuals or entities from knowingly benefiting or attempting to benefit "financially or by receiving anything of value from participation in a venture which that person knew or should have known" was engaged in trafficking.

3.      This case is about the continuous sex trafficking of DDH that occurred at four (4) Motel 6 hotels at 100 W Disney Way, Anaheim CA 92802; 1441 Gisler Avenue, Costa Mesa CA

1

92626; 701 S. Brookhurst Street, Anaheim CA 92804; and 225 Colorado Place, Arcadia CA 91007. As discussed herein, each of the defendants in this case knowingly benefitted from participation in a venture that facilitated trafficking and ultimately, DDH's trafficking at the subject hotels. Accordingly, DDH brings suit under the TVPRA.

## JURISDICTION & VENUE

4.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this District and Division and/or the defendants or some of them are subject to the court's personal jurisdiction with respect to such action.

## PARTIES

6.     DDH is a natural person who is currently a resident and citizen of California.

7.     Defendant G6 Hospitality LLC is a for-profit Delaware Corporation with its principal place of business in Carrolton, Texas. It may be served through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701 and Cogency Global Inc., 4459B Bluebonnet Blvd., Baton Rouge, LA 70809.

8.     Defendant G6 Hospitality IP, LLC is a for-profit Delaware Corporation with its principal place of business in Carrolton, Texas. It may be served through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

9.      Defendant G6 Hospitality Property, LLC is a for-profit Delaware Corporation with its principal place of business in Carrolton, Texas. It may be served through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701 and Cogency Global Inc., 4459B Bluebonnet Blvd., Baton Rouge, LA 70809.

10.      Defendant G6 Hospitality Purchasing, LLC is a for-profit Delaware Corporation with its principal place of business in Carrolton, Texas. It may be served through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

11.      Defendants G6 Hospitality LLC, G6 Hospitality IP, LLC, G6 Hospitality Property, LLC, and G6 Hospitality Purchasing, LLC will collectively be referred to as "G6". Upon information and belief, they owned, operated, controlled, and/or managed the Motel 6 locations at 100 W Disney Way, 1441 Gisler Avenue, 701 S. Brookhurst Street, 225 Colorado Place.

12.      Defendant Handy, Moss & Marian Living Trust is a California entity which does not maintain a registered agent for service in Texas and can be served by service on the Texas Secretary of State at Service of Process,  Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105 Austin, Texas 78701 by service of two copies of the Complaint and forwarded to by service of two copies of the Complaint and forwarded to Handy, Moss & Marian Living Trust at 225 Colorado Place, Arcadia CA 91007.  Upon information and belief, it owned, operated, controlled, and/or managed the Motel 6 at 225 Colorado Place, Arcadia CA 81007.

13.      Defendant Shri Raam Krushna, LLC is a California limited liability company which does not maintain a registered agent for service in Texas and can be served by service on the Texas Secretary of State at Service of Process,  Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105 Austin, Texas 78701 by service of two copies of the Complaint and

forwarded to by service of two copies of the Complaint and forwarded to its agent for service in California, Samir Balubhai Patel at 701 S. Brookhurst Street, Anaheim CA 92804. Upon information and belief, it owned, operated, controlled, and/or managed the Motel 6 located at 701 S. Brookhurst Street, Anaheim CA 92804.

## FACTS

**The Hotel Industry's Role in Sex Trafficking**

14.    What Defendants knew or should have known about the sex trafficking that was occurring in their jointly operated hotel, including the trafficking of DDH, is shaped by the widely known and pervasive relationship between the hotel industry and sex trafficking.

15.    Defendants are aware of the important role that hotels play in the proliferation of sex trafficking and of the revenue they derive from sex trafficking, both directly and indirectly, from sex trafficking that occurs at their properties.  Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[1] For years, sex traffickers have "been able to reap these profits with little risk when attempting to operate within hotels."[2] In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[3] Hotels have been found to account for over 90% of commercial exploitation of children.[4]

---

[1] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune (April 2019),https://fortune.com/2019/04/14/human-sex-trafficking-us-slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id.*

[2]    *See Human Trafficking in the Hotel Industry*, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; *see also* Eleanor Goldberg, *You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic*, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.

[3] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hotel Industry*, Cornell Hotel Report (Oct. 2015), https://scholarship.sha.cornell.edu/cgi/viewcontent.cgi?article=1222&context=chrpubs.

[4] *See* Erika R. George and Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery*, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).

16.     To address the crisis of sex trafficking at hotels, multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[5]

17.     Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:[6]

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

- Individuals show signs of physical abuse, restraint, and/or confinement;

- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

- Individuals lack freedom of movement or are constantly monitored;

- Individuals avoid eye contact and interaction with others;

- Individuals have no control over or possession of money or ID;

- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

- Individuals have few or no personal items—such as no luggage or other bags;

---

[5] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023); National Center for Missing and Exploited Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).
[6] *See Id.*

- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

- A group of girls appears to be traveling with an older female or male;

- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

- Possession of bulk sexual paraphernalia such as condoms or lubricant;

- Possession or use of multiple cell phones; and

- Possession or use of large amounts of cash or pre-paid cards.

18. Recognizing the unique vantage point that hotel owners and staff often have to identify potential human trafficking ventures and victims on their properties, several major hotel chains, including franchisors, franchisees, and owner/operators, have told the public they have accepted the unique opportunity and responsibility to stop facilitating sex trafficking. In order to meet that responsibility, several (if not most) major hotel chains have adopted robust anti-human trafficking policies to train its employees to identify and properly respond to the "red flags" of sex trafficking. Each and every Defendant named herein had the opportunity and responsibility to adopt, implement, and enforce similar policies at Motel 6. Unfortunately for DDH, such policies were not in place or were not enforced at Motel 6.

**The Use of Motel 6 Branded Properties for Sex Trafficking is Prevalent**

19. Countless tales of tragedy establish the entrenched, pervasive nature and knowledge of Motel 6's role as the venue for sex trafficking across the Unites States for years:

- In 2016 the City of Los Angeles settled a case against G6 for sex trafficking out of a hotel located in Los Angeles.

- In late 2003, a trafficker set up a sex trafficking venture at a Motel 6 in Connecticut in which two (2) young women were sold for sex eight (8) to ten (10) times per day.[16]

- In April 2009, a sex trafficking venture operated out of a Motel 6 in Toledo, Ohio.[17]

- In approximately September 2011, sex traffickers set up an operation at a Motel 6 in Toledo, Ohio to sell fifteen (15) and sixteen (16) year old girls for sex.[18]

- From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6 in Harvey, Illinois.[19]

- Police rescued an eighteen (18) year old girl from a sex trafficker in February 2012, at a Motel 6 in Portland, Oregon.[20]

- The FBI investigated and arrested several individuals in December 2012, for the victimization and human trafficking of several young women and a juvenile at a Motel 6 in Madison, Alabama.[21]

- The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6 in Anaheim, California.[22]

- In approximately March 2013, sex traffickers began operating a sex trafficking venture out of Motel 6 locations in Bangor and Portland, Maine.[23]

- Beginning in approximately May 2013, a fifteen (15) year old runaway was trafficked for sex out of the Motel 6 on Caton Avenue in Baltimore, Maryland.[24]

- In Richmond County, Georgia a man was arrested at a local Motel 6 in October 2013 and charged with sex trafficking of two young women.[25]

- Police investigated a sex trafficker in March 2014 and ultimately charged him for his crimes including, but not limited to, selling a seventeen (17) year old girl for sex out of a Motel 6 in Roseville, Minnesota.[26]

- In May 2014, two (2) traffickers were arrested at a Motel 6 in Monterey, California after a twenty-one (21) year old woman escaped from their captivity.[27]

- In the summer of 2014, two (2) girls ages fifteen (15) and sixteen (16) were taken from a children's shelter by a sex trafficker and trafficked out of a Motel 6 in Cutler Bay, Florida.[28]

- A Las Vegas man was charged with sex trafficking two (2) victims, including a seventeen (17) year old girl, in January 2015, out of a Motel 6 in Rapid City, Nevada.[29]

- In February 2015, two (2) men were arrested for sex trafficking a fourteen (14) year old girl at a Motel 6 in Seekonk, Rhode Island.[30]

- A local law enforcement investigation resulted in the rescue of a fifteen (15) year old runaway in February 2015, from a Motel 6 near the Oakland, California airport where she was being sex trafficked.[31]

- In North Charleston, South Carolina, a seventeen (17) year old girl was rescued in March 2015 from a Motel 6 by special agents from the United States Department of Homeland Security. The girl was sold for sex, beaten, and starved by a sex trafficker.[32]

- Two men were arrested in March 2015 for sex trafficking a fifteen (15) year old girl at Motel 6 in Austin, Texas.[33]

- In March 2015, police arrested a man for sex trafficking a runaway seventeen (17) year old at a Motel 6 in Warwick, Rhode Island.[34]

- Over a fourteen (14) month period ending in approximately April 2015, at the same Motel 6 in Warwick, Rhode Island had seventy-five (75) arrests on its property for crimes including sex-trafficking.[35]

- Seven (7) people were indicted in January 2016, by a Colorado grand jury for sex trafficking children from 2014 through the summer of 2015, out of hotels in Denver, Colorado, including a Denver area Motel 6.[36]

- In the summer of 2015, a woman was arrested at a Motel 6 in Great Falls, Montana where she was involved in sex trafficking a seventeen (17) year old girl.[37]

- A married couple was indicted in June 2015, for their roles in sex trafficking minor children ages seventeen (17), sixteen (16), and fifteen (15) years old out of a Motel 6 in Everett, Washington.[38]

- In Tuscaloosa, Alabama police rescued a fourteen (14) year old girl from a Motel 6 in June 2015, and a grand jury subsequently charged her assailant with human trafficking and rape.[39]

- In approximately July 2015, sex traffickers sold a fifteen (15) year old girl for sex at a Motel 6 in Pismo Beach, California.[40]

- In November 2015 a man was arrested at a Motel 6 in Ventura, California and was criminally charged with sex trafficking a fifteen (15) year old girl who was found with him.[41]

20.     Motel 6 advertises so-called partnerships with anti-trafficking organizations, but internal communications indicate the partnership is more for advertising purposes than actual anti-trafficking efforts.

21.    This sampling of news stories establishes that G6 Hospitality knew (or at a minimum, certainly should have known):

- The use of Motel 6 for sex trafficking and prostitution was not isolated to one location;

- The use of Motel 6 for sex trafficking was not isolated to one specific geographic region and was a nationwide problem;

- Motel 6 was involved with multiple law enforcement investigations involving sex trafficking;

- Sex trafficking at Motel 6 inherently involved compelled prostitution; and

- Motel 6 failed to ensure adequate proper policies and procedures were in place and being followed to prevent sex trafficking.

**The Use of Motel 6 for Sex Trafficking Was Well Known**

22.    Despite the rampant trafficking occurring at its hotels for over a decade, it was not until September 2018, that G6 Hospitality announced that "the company will introduce anti-human trafficking training to corporate, field and property team members...Additionally, the company developed its own training for all property team members to understand how to effectively intervene and identify potential trafficking situations to protect each other, guests and the community."

23.    Even after this announcement, sex trafficking at Motel 6 properties continued:

- In November 2018, federal authorities arrested a man for sex trafficking a woman out of a Motel 6 in San Jose, California.[49]

- In December 2018, a husband and wife were arrested for sex trafficking women who were Chinese nationals out of a Motel 6 in Portsmouth, New Hampshire from approximately 2016 through 2017.[50]

- A fourteen (14) year old girl was held against her will at a Motel 6 in Raleigh, North Carolina and sex trafficked in or around January 2019.[51]

**DDH Was Trafficked at Motel 6**

24.     One of the lives devalued and otherwise adversely affected by Defendants' inattention to the prevention and eradication of sex trafficking was DDH.

25.     From approximately 2012 through 2014, DDH was repeatedly trafficked for sex at the Motel 6 locations at 100 W Disney Way, Anaheim CA 92802; 1441 Gisler Avenue, Costa Mesa CA 92626; 701 S. Brookhurst Street, Anaheim CA 92804; and 225 Colorado Place, Arcadia CA 91007.

26.     The hotel rooms in which DDH was trafficked were frequently paid for with cash or prepaid cards.

27.     Multiple other girls were being trafficked at the same hotel at the same time as DDH by multiple traffickers. Collectively they would see up to fifty johns per day.

28.     DDH's trafficker was often present with DDH at check in. When she was with a john he would wait in the hotel's lobby or business center. Immediately after she saw a john, the trafficker would go up to her room to collect the money. The hotel staff saw him go up and down many times a day without DDH.

29.     Depending on the time of day, DDH and the other girls being trafficked would have to go downstairs to meet the johns.

30.     There was also heavy foot traffic in and out of DDH's room involving men who were not hotel guests. The men often had to walk through the lobby and past the front desk to get to the rooms. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time, which are signs of sex trafficking that hotel staff observed.

31.     Because policies purportedly enacted and enforced by G6 to identify signs of sex trafficking and stop it from occurring were not properly implemented at the subject Motel 6s by

either G6 Defendants or Franchisee Defendants, DDH's trafficker was able to continue the trafficking venture at the Motel 6s.  Had G6 Defendants enforced the policies and procedures they eventually enacted to prevent trafficking from occurring within their Motel 6  branded hotels after observing obvious signs of trafficking as described above, DDH's trafficking would have been identified and reported, which would have prevented her continued trafficking. Furthermore, had Franchisee Defendants properly followed the franchise policies enacted by G6 Defendants to identify and prevent trafficking from occurring at the Motel 6 branded hotels as described above, DDH's trafficking would have been identified and reported, which would have prevented her trafficking.

32.    Despite obvious signs of human trafficking and indicators of commercial sex activity, Defendants failed to recognize, stop, or report the venture occurring on the premise that resulted in DDH's trafficking and consequently, actively facilitated the trafficking venture. The Defendants harbored or otherwise facilitated a sex trafficking venture on their hotel properties and accordingly, benefited, financial and otherwise, from the sex trafficking the Plaintiff suffered. Furthermore, the Defendants failed to prevent her continued victimization.

33.    Defendants, acting by and through their agents, managers, vice-principals and employees, did not act to reduce or eliminate the human sex trafficking in the subject Motel 6s, despite the obvious signs of sex trafficking and commercial sex taking place there because said Defendants were actively engaged in facilitation of and benefiting from said activities.

**Franchisee Defendants Were Required to Report to the Franchisor, G6**

34.    The relationship between Franchisee Defendants and G6, as franchisor, was governed by a franchise agreement.

11

35.    On information and belief, at all material times, G6 had robust reporting requirements in place for its franchisees, such as Franchisee Defendants.

36.    On information and belief, G6 requires its franchisees, such as Franchisee Defendants, to report all suspected instances of crime at Motel 6  branded properties.

37.    Based on information observed by the staff at the subject Motel 6s , reports should have been made to Defendant G6 about the sex trafficking of DDH.

38.    Therefore, as a result of the strict reporting requirements, at all material times, each and every Defendant knew or should have known of their facilitation of sex trafficking at the Motel 6, including the facilitation of the sex trafficking of DDH.

39.    Defendant G6 exercised pervasive and systematic control over Franchisee Defendants.

40.    Defendant G6 exercised an ongoing and systemic right of control over Franchisee Defendants regarding the operation of the subject Motel 6s.

41.    At all relevant times, Franchisee Defendants were subject to and required to comply with franchise agreement standards, policies, and rules adopted by Defendant G6. These standards and policies are detailed and control the specific manner and means by which Franchisee Defendants must operate the subject Motel 6s .

42.    G6 requires its franchisees, such as Franchisee Defendants, to report all suspected instances of sex trafficking at Motel 6 branded properties.

43.    G6 required its franchisees, such as Franchisee Defendants, to allow G6 to regularly inspect its Motel 6 branded hotels.

44.    G6 regularly inspected the Motel 6s.

45.    One of G6's most valuable assets is its brand.

46.     On information and belief, G6 required Franchisee Defendants to adhere to strict requirements, including but not limited to:

- standardized training methods for employees at the Motel 6;

- building and maintaining the Motel 6 in a manner specified by G6;

- standardized or strict rules of operation for the Motel 6;

- regular inspection of the Motel 6 and its operation by Defendant G6;

- prices fixed by Defendant G6 for the Motel 6;

- Defendant G6 provided an online booking platform for the Motel 6;

- Defendant G6 established reporting requirements for the Motel 6; and

- other actions that deprived Franchisee Defendants of independence in the business operations of the Motel 6.

47.     G6 specifically retained control over the day-to-day operation of Franchisee Defendants with regard to aspects of operation of the subject Motel 6s that caused DDH's harm, including but not limited to reservation policies and procedures, staff training, security policies, and training, education polices, and procedure regarding human trafficking.

48.     G6 regularly advised Franchisee Defendants on operational changes necessary for it to remain in compliance with G6's strict regulations.

49.     G6 had the ability to impose fees or fines on Franchisee Defendants. Furthermore, at all material times, G6 retained an absolute right to cancel its franchise agreement with Franchisee Defendants if G6's rules were violated or if Franchisee Defendants otherwise failed to comply with its contractual obligations.

50.     At all relevant times, Franchisee Defendants acted as the agent of Defendant G6 when operating the subject Motel 6s.

13

51.     G6 and Franchisee Defendants shared control of the terms and conditions of the employment of staff at the subject Motel 6s and, therefore, Defendant G6 and Franchisee Defendants are joint employers. Upon information and belief, Defendant G6 exercised control over the terms and conditions employment of staff at the subject Motel 6s by advertising employment opportunities, making or influencing employment decisions, setting employee wages, and adopting standardized rules of operations that govern the day-to-day work of the employees.

52.     Therefore, as a result of the strict reporting requirements, at all material times, each and every Defendant knew or should have known of their facilitation of sex trafficking at the subject hotels, including the facilitation of the sex trafficking of DDH.

**DDH's Trafficking Could Have Been Prevented**

53.     At all material times, each and every Defendant owned, operated, managed, supervised, controlled, and/or was responsible for the operations of the subject Motel 6s.

54.     Defendants acted jointly to rent rooms with G6 retaining control over reservation systems and policies, training, and protocols as further described in this Complaint.

55.     Defendants were jointly responsible for customer safety and, specifically, prevention of human trafficking at the subject Motel 6s.  Defendant G6 retained control over, and thus had a duty with respect to, customer safety at the subject Motel 6s generally and specifically regarding detection of and response to human trafficking at the Motel 6s.

56.     Armed with knowledge of the prevalence of trafficking in the hotel industry, at Motel 6s hotels across the country, and the signs present at the subject Motel 6s, each and every Defendant had an obligation to enact, implement, follow, and enforce policies to identify sex trafficking and not to participate in or benefit from the facilitation thereof. Each and every Defendant failed to do so and thus facilitated sex trafficking that operated out of the Motel 6s.

57.     The most effective weapon against sexual exploitation and human trafficking is education and training.[7] As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[8]

58.     This same conclusion is echoed by others who seek to eliminate or minimize sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[9] In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

59.     If the Defendants had adequately trained and implemented guidelines, "red flags," training policies and procedures, and other recommendations adopted in the industry, each and every Defendant would have or should have known of DDH's trafficking at the subject Motel 6s and would have been in a position to prevent the trafficking of DDH.

60.     The "red flags" and signs of a sex trafficking venture described above were observed by Franchisee Defendants. Upon information and belief, Franchisee Defendants should have reported the signs of sex trafficking to Defendant G6.

---

[7] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).
[8] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.
[9] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

61.    Had each and every Defendant educated and/or trained their actual or apparent agents, servants, franchisees, employees and/or staff regarding human trafficking and their warning signs, their actual or apparent agents, servants, franchisees, employees and/or staff would have more aware of human trafficking taking place at their hotels, including the subject Motel 6s, and could have, at best, prevented it from happening or, at worst, been more willing to report it when it happened.

62.    Each and every Defendant's active decision not to prevent and stop sex trafficking and sexual exploitation at their hotels, including the subject Motel 6s, makes them accountable to victims of sex trafficking, including the Plaintiff DDH.

63.    Thus, each and every Defendant engaged in acts and omissions that were supported, facilitated, harbored, and otherwise furthered the trafficker's sale and victimization of DDH for commercial sexual exploitation. More specifically, the Defendants rented rooms to DDH's trafficker, permitted their illicit enterprise to operate on an ongoing and repetitious basis, and took no action to abide by G6's own self-imposed anti-trafficking measures. This and related behavior by Defendants provide an ample basis to conclude that they participated in the venture that trafficked DDH.

64.    The motivation behind each and every Defendant's ongoing willful blindness and ongoing failure to act is plain and simple – limitless corporate greed; each and every Defendant ignored all of the signs of and/or solutions to human trafficking out of an unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

**Each Defendant Knowingly Benefitted from DDH's Sex Trafficking**

65.    Plaintiff alleges that each of the Defendants knowingly received benefits from participating in the venture that facilitated DDH's trafficking at the subject Motel 6s.

16

66.     As a result of the strict reporting requirements at all material times, both Defendants knew they were both facilitating and benefitting from sex trafficking at the subject Motel 6s including the sex trafficking of DDH.

67.     G6, as franchisor, generates substantial income from the operations of its hotels. In exchange for providing the services described above and more specifically delineated in the controlling franchise agreement, G6, on information and belief, received a share of the profits from room rentals collected by Franchisee Defendants at the subject Motel 6s. The primary source of G6's income is the franchising royalty fee, but G6 also profits from reservation fees, marketing fees, loyalty program fees, and other miscellaneous ancillary fees, as described in the franchise documents and from room rentals and associated sales at its direct operations. The fees generated by G6 are primarily based on gross room rentals; therefore, G6's profits increase with each room rental.

68.     Franchisee Defendants profited from every stay by every patron at the Motel 6s, both from room rentals and other hotel services.

69.     Upon information and belief, G6 knowingly benefitted from its participation in the sex trafficking venture carried on at the subject Motel 6s in that it received a portion of the proceeds collected by its franchisees.

70.     Therefore, at all material times, Defendant G6 and Franchisee Defendants received monetary payment for the rental of rooms at the subject Motel 6s, including the rooms where DDH was being trafficked.

71.     Despite knowledge of the sex trafficking venture occurring at the subject Motel 6s, both Franchisee Defendants and Defendant G6 continued to financially benefit from DDH's stay

at the subject Motel 6s, all while doing nothing to prevent or stop criminal activity-sex trafficking, including the trafficking of DDH, from occurring on their property.

72.     As a result of the monies paid by DDH's trafficker to secure rooms for her trafficking at the subject Motel 6s, Defendant G6 and Franchisee Defendants knowingly benefitted from participating in the venture that trafficked, harbored, and maintained DDH's trafficking at the Motel 6s.

### CAUSE OF ACTION—SEX TRAFFICKING UNDER THE TVPRA

73.     DDH incorporates all other allegations.

74.     At all relevant times, DDH was and is a victim within the meaning of 18 U.S.C. § 1591 and 1595(a).

75.     Defendants are liable as perpetrators within the meaning of 18 U.S.C. § 1595(a) because in the ways described above:

- Each Defendant knowingly or recklessly participated in harboring, maintenance, and/or other acts in further of sex trafficking, including the sex trafficking of DDH; and

- Each Defendant knowingly benefitted, by receiving financial and other compensation, through their participation in a venture that they knew or were reckless in not knowing involved involving the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits. 18 U.S.C. §§ 1590(a), 1591(a)(2), 1593A.

76.     Defendants are liable as beneficiaries within the meaning of 18 U.S.C. § 1595(a) because, as described above, each and every Defendant knowingly benefitted, by receiving financial and other compensation, for their participation in a venture they knew or should have known was engaged in sex trafficking, in violation of the TVPRA, 18 U.S.C. § 1591, *et seq.*

77.     Each Defendant participated in a venture together and with, among others, DDH's trafficker. Despite the fact that Defendants knew or should have known that DDH was being sex trafficked in violation of the TVPRA, DDH's trafficker was able to continue renting rooms for the

sexual exploitation of DDH at the subject Motel 6s. DDH's sex trafficker frequently used the subject Motel 6s because they knew that staff members looked the other way despite obvious signs of trafficking. Each of the venturers shared a common purpose – the rental of hotel rooms and the making of profits. Each Defendant profited while DDH's trafficker was able to rent a secure venue to earn profits by trafficking DDH. Each Defendant participated in the venture by continually renting rooms to DDH's trafficker, failing to properly implement anti-trafficking rules and policies, and assisting traffickers to continue their sexual exploitation with minimal risk of detection and disturbance, all the while ignoring the obvious signs of DDH's trafficking.

78.    Each Defendant's failure to train and supervise their agents and employees and their inattention to the plights of their patrons, including DDH at the subject Motel 6s, enabled and contributed to the sex trafficking of DDH.

79.    Each Defendant received substantial financial benefits as a result of these acts and/or omissions. G6 received benefits in the way of management fees, royalty fees, reservation fees, marketing fees, and other ancillary fees from the operation of the subject Motel 6s. Franchisee Defendants and the G6 Defendants received benefits in the way of room rental fees, in-room purchases, and other ancillary expenses by patrons and visitors of the subject Motel 6s.

80.    The facts alleged establish that each Defendant knowingly benefitted, financially or by receiving anything of value from participating in a venture that Defendants knew or should have known has engaged in an act in violation of the TVPRA.

81.    Each Defendant's TVPRA violations were a direct, producing, and proximate cause of the injuries and damages to DDH.

82.    DDH further alleges that, as a result of the relationship between G6 and Franchisee Defendants, G6 is vicariously liable for the acts of Franchisee Defendants, including at the Motel

6s. Factors that support this allegation are that G6 shared profits, standardized employee training, standardized and strict rules of operations, G6 controlled pricing and reservations, regularly conducted inspections, operational support and control, and other acts described above. Finally, G6 had the right to terminate any franchisee, including Franchisee Defendants, that failed to comply with the requirements promulgated by G6. Thus, G6 retained control, or the right to control, the mode and manner of work contracted for.

83.     DDH further alleges that G6 is vicariously liable for the acts and omissions of the staff at the subject Motel 6s because G6, together with Franchisee Defendants, acts as the joint employer of these employees because G6 and Franchisee Defendants jointly control the terms and conditions of their employment.

## **DAMAGES**

84.     G6 and Franchisee Defendants' acts and omissions, individually and collectively, caused DDH to sustain legal damages.

85.     G6 and Franchisee Defendants are joint and severally liable for all past and future damages sustained by DDH.

86.     DDH is entitled to be compensated for personal injuries and economic damages, including:

    a.  Actual damages;

    b.  Direct damages;

    c.  Incidental and consequential damages;

    d.  Mental anguish and emotional distress damages (until trial and in the future);

    e.  Lost earning capacity in the future;

    f.  Loss of self-esteem and self-worth;

g.  Necessary medical expenses;

h.  Physical pain and suffering;

i.  Physical impairment;

j.  Emotional impairment;

k.  Unjust enrichment; and

l.  Penalties.

87.    DDH is entitled to exemplary damages.

88.    DDH is entitled to treble damages.

89.    DDH is entitled to recover attorneys' fees and costs of court.

90.    DDH is entitled to pre-and post-judgment interest at the maximum legal rates.

91.    A constructive trust should be imposed on G6 and Franchisee Defendants and the Court should sequester any benefits or money wrongfully received by G6 or Franchisee Defendants for the benefit of DDH.

**<u>DISCOVERY RULE</u>**

92.    To the extent Defendants assert an affirmative defense of limitations, Plaintiff invokes the discovery rule. At the time Plaintiff was harmed, Plaintiff did not know that she was the victim of human trafficking, that her injury arose from being trafficked at Defendant(s) hotels or that she was a person trafficked, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to discover the legal cause of her injury, and certainly not more than ten years before suit was filed. Moreover, at the time the trafficking occurred, Plaintiff did not know what "human trafficking" was, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to

discover the existence of a cause of action until shortly before suit was filed, and certainly not more than ten years before suit was filed.

## JURY TRIAL

93.     DDH demands a jury trial on all issues.

## RELIEF SOUGHT

94.     Wherefore, DDH respectfully requests judgment against G6 and Franchisee Defendants, jointly and severally, for actual damages in excess of the minimum jurisdictional limits of this Court, pre-and post-judgment interest as allowed by law, costs of suit, attorney fees, and all other relief, at law or in equity, to which she may be justly entitled.

Respectfully submitted,

**PROVOST ★ UMPHREY LAW FIRM**

By: ___*/s/ Bryan O. Blevins, Jr.*___
     BRYAN BLEVINS (SB 02487300)
     MATT MATHENY (SB 24039040)
     COLIN MOORE (SB 24041513)
     CLAIRE BROWN (SB 24108010)
     350 Pine Street, Ste. 1100
     Beaumont, TX 77701
     Phone:  409/835-6000
     bblevins@pulf.com
     mmatheny@pulf.com
     cmoore@pulf.com
     cbrown@pulf.com



By: ___*/s/ Kenneth T. Fibich*___
     Kenneth T. Fibich
     Texas Bar No.: 06952600
     tfibich@fibichlaw.com
     Sara J. Fendia
     Texas Bar No. 06898800
     sfendia@fibichlaw.com
     Kelley Bogusevic
     Texas Bar No. 24063159
     kbogusevic@fibichlaw.com
     1150 Bissonnet Street
     Houston, Texas 77005
     713-751-0025 (Telephone)
     713-751-0030 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**